UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHNNY A. RIZO, | ) CASE NO. 4:12cv1798 |
| | ) |
| Petitioner | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| -vs- | ) |
| | ) |
| MICHAEL PUGH, | ) <u>MEMORANDUM OF OPINION</u> |
| | ) <u>AND ORDER</u> |
| | ) |
| Respondent. | ) |

Before the Court is *pro se* Petitioner Johnny Rizo's above-captioned "Petition for Second Successive Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241." Petitioner, who is incarcerated at the Northeast Ohio Correctional Center (N.E.O.C.C.) in Youngstown, Ohio, names N.E.O.C.C. Warden Michael Pugh as Respondent. He seeks an Order directing the Respondent to restore Good Credit Time (GCT) lost as a sanction for his violation of a Bureau of Prisons (BOP) Code. For the reasons outlined below, the Petition is denied.

### *Background*

Petitioner was named in an indictment filed in the United States District Court for the

Northern District of Florida.[1] *See United States v. Murga, et al.*, Case No. 3:04-cr-00047(N.D. Fl. filed Apr. 21, 2004). A superceding indictment was filed on July 21, 2004. The following month, Petitionerr pled guilty and entered into a Plea and Cooperation Agreement on August 26, 2004.

On September 20, 2004, Petitioner was indicted a second time in the United States District Court for the Northern District of Florida. *See United States v. Rizo*, 3:04cr0094 (N.D. Fl. Sept. 20, 2004). The following month, he pleaded guilty to two counts of the indictment. On January 11, 2005, Petitioner was sentenced in both criminal cases. The court sentenced him to serve 60 months on Count 1 of the superceding indictment in Case No. 3:04cr0047, and to two consecutive terms of 60 months on Counts 1 and 2 of the indictment in Case No. 3:04cr0094.

In 2009, Petitioner was incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey. On November 27, 2009, he was in a third floor bathroom at F.C.I. Fort Dix when an officer entered the room at approximately 11:55 p.m. The officer observed Petitioner being handed an object while he stood in front of a bathroom sink. As he approached Petitioner, the officer ordered him to turn around. Petitioner very hesitantly complied with the order. When the officer's pat search of Petitioner failed to yield any results, he turned toward the sink and noticed a black cellular telephone laying in the bottom of the basin. The faucet was running, but very little water was on the telephone. The officer retrieved Petitioner's identification and notified the Operations Lieutenant. The next day, an incident report was issued charging Petitioner with possession, manufacture, or introduction of a hazardous tool in violation of BOP Code 108. Considering the

---

[1] Very few relevant facts are provided by the Petitioner in his criminal case. Therefore, because this Court "may take judicial notice of proceedings in other courts of record," *Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th Cir.1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)), it will rely on the Public Access to Court Electronic Records (PACER) system for details on the procedural history of Petitioner's criminal case.

seriousness of the offense, the Unit Disciplinary Committee referred the matter to the Disciplinary Hearing Officer (DHO) for further hearings.

Petitioner was advised of his rights before the DHO on December 4, 2009. A DHO hearing was held where he declined the assistance of a staff representative. Furthermore, Petitioner chose not request the presence of a witness. Instead, he denied the charge stating:

> I walked in the bathroom and went to the urinal. As I am walking back from the urinal the officer walked in. This is a small bathroom with only two sinks. A lot of guys that were there walked out. I had nothing to hide so I did not run. I go to the sink and another inmate was washing his hands. I went to the other sink to wash my hands. As I am walking the officer is patting down another inmate. They [sic] back was turned. Another inmate slipped the phone in the sink where I am at [sic]. As this inmate stepped away that's when he gave me an order to turn around. He was letting the guy go.

(Pet.'s Ex. C. - Incident Rpt. at ¶ III., B.) The DHO considered Petitioner's statement, but found it less credible than the officer's written account of the facts. He believed the officer, who was legally obligated to tell the truth, had no vested interest in the outcome of the report. Conversely, he reasoned that Petititioner had everything to gain by deflecting blame. Moreover, the cellular telephone log for incoming/outgoing calls contained telephone numbers that were on Petitioner's approved list.

Based on the greater weight of evidence, the DHO found Petitioner's actions consistent with a violation of Code 108A, Possession of a Hazardous Tool. He was sanctioned with the loss of 30 days segregation, the loss of 40 days Good Conduct Time (GCT), the forfeiture of 60 days non-vested GCT and loss of telephone, visitation and commissary privileges for 30 days.

Petitioner attempted to exhaust his administrative remedies, but the Regional Office rejected his appeal as untimely. He now challenges that determination as well as asserting that his right to

due process was violated by the DHO.

### *Discussion*

Petitioner now argues he was denied due process when the DHO found him guilty of an infraction without sufficient evidence. He challenges the facts recited by the reporting officer; namely, the fact that a telephone was handed to him. Petitioner argues that if the officer's version of the facts were true, then the inmate who handed him the telephone would be the guilty party. He maintains it is far more likely that this inmate was attempting to get rid of evidence and planted it on Petitioner.

Petitioner further challenges the fact that no copy of the telephone list to which the DHO referred was attached to the incident report or presented during the DHO hearing. Citing Federal Criminal Rule 16, Petitioner maintains the DHO failed to comply with the Rule regarding the production of documents, papers, data and tangible objects. Because the photograph of the telephone and the cellular phone log were not shared with him prior to the hearing, Petitioner argues this evidence could not be used to establish his guilt. From this he concludes the DHO's decision was completely arbitrary. He now seeks an Order restoring both the GCT days revoked and those forfeited by the DHO.

### *Initial Review*

This matter is before the Court for initial screening. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). A court is required to award an application for writ of habeas corpus "unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The Sixth Circuit has consistently held that "[t]he burden to show that he is in custody in violation of the Constitution of the United States

is on the prisoner." *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970)(citations omitted), *cert. denied* 400 U.S. 906 (1970). Petitioner has not met his burden.

### *28 U.S.C. §2241*

Prisoner claims seeking to challenge the execution or manner in which a sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). Petitioner is clearly attacking the manner in which the BOP is executing his sentence.[2] Because this Court has personal jurisdiction over his custodian, Respondent Warden Pugh, the matter was properly filed in this Court.

In addition to establishing this Court's personal jurisdiction over Petitioner's custodian, a federal prisoner must first exhaust available remedies before filing a § 2241 petition for habeas corpus relief. *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981). Exhaustion of administrative remedies within the BOP is a non-jurisdictional prerequisite to seeking review of the BOP's calculation of an inmate's release date. *See United States v. Westmoreland*, 974 F.2d 736, 737-38 (6th Cir. 1992), *cert. denied*, 507 U.S. 1019 (1993).

Where, as here, a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then he has procedurally defaulted his habeas corpus claim. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996). Because exhaustion is non-jurisdictional in this case, the Court must determine whether to excuse the faulty exhaustion and reach the merits, or require Petitioner to exhaust his administrative remedies before proceeding in this Court. *Reno v. Koray*, 515 U.S. 50, 54-55 (1995); *see Barrett v. Acevedo*, 169 F.3d 1155, 1162

---

[2]Although Petitioner characterizes this as a "successive" petition, Section 2244 of United States Code Title 28 does not apply to habeas petitions seeking to challenge the BOP's execution of a prisoner's sentence. *See* 28 U.S.C. §2244(b).

(8th Cir. 1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"), *cert. denied*, 528 U.S. 846 (1999)(exhaustion of state remedies). In this instance, judicial economy urges summary dismissal of this action for the reasons set forth below.

### *Disciplinary Hearing-Right to Due Process*

Because Petitioner was sanctioned with the loss of GCT, he is entitled to some due process protection. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). That protection includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. *Id*. A disciplinary decision will satisfy the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445 (1985).

There is no dispute Petitioner was provided notice, a hearing and a written explanation of the disciplinary action taken against him. Thus, while a federal constitutional violation in a prison misconduct proceeding that results in the loss of GCT may be remedied through a writ of habeas corpus, Petitioner must still establish he was denied some process to which he was due before he is entitled to habeas relief. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In this case, Petitioner received all of the due process safeguards outlined in *Wolff*.

Petitioner challenges the sufficiency of the evidence presented by the DHO. This Court, however, has no authority to order the BOP to revisit the issue. A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining

-6-

whether some evidence supports the decision. *See Superintendent, Mass. Corr.*, 472 U.S. at 450. The Court is not permitted to re-weigh the evidence presented to the board. *Id*. The quantity of evidence to support a disciplinary conviction is minimal and does not involve the independent assessment of witness credibility or weighing of evidence by the federal courts. *Id*. Contrary to Petitioner's assertions, prisoners who are lawfully committed to a penal institution are not entitled to the full panoply of rights in disciplinary hearings which would be due in criminal prosecutions. *Wolff*, 418 U.S. at 556. Therefore, the BOP is not required to comply with the Federal Rules of Criminal Procedure during a DHO hearing. Consequently, a prison disciplinary decision should be upheld if "some evidence" in the record supports the decision. *Superintendent, Mass. Corr.*, 472 U.S. at 455-56.

There is no dispute a cellular telephone was found directly in front of Petitioner in a bathroom sink. The telephone contained incoming and outgoing calls which were on Petitioner's assigned list of approved callers.

### *Procedural Default Determination Denies Due Process*

Finally, Petitioner suggests his right to due process was violated when the BOP denied his appeal as untimely. Several courts, including the Sixth Circuit, have characterized administrative appeals as remedial and held that they are not an element of the due process rights afforded inmates. *See Boles v. Weist*, No. 87-1862, 1988 WL 58866 (6th Cir. June 10, 1988)("Plaintiff does not have an inherent constitutional right to appeal his disciplinary conviction"); *Chance v. Compton,* 873 F. Supp. 82, 86 (W.D. Tenn. 1994)(right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*); *Harrison v. Seay*, 856 F. Supp. 1275, 1281 (W.D. Tenn. 1994).

Even in *Wolff*, the Supreme Court provided some support for the position that no due process right attaches to the administrative appeals process. There, the Court found that, while the state of Nebraska did not appear to provide for administrative review of disciplinary decisions, that absence was not a fatal flaw to the due process protection afforded inmates in that state. Thus, this Court finds Petitioner cannot allege any due process right to an administrative appeal.

### *Conclusion*

Based on the foregoing, Petitioner's Motion to Proceed *In Forma Pauperis* is granted and the Petition is denied pursuant to 28 U.S.C. §2243. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

---

[3]The statute provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).